CLERK'S OFFICE
A TRUE COPY
Dec 18, 2023
s/ Mariah Kauder
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means

❒ Original          ❒ Duplicate

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of: | ) | |
| | ) | |
| | ) | Case No.   23-M-531 (SCD) |
| The Use of a Cell-Site Simulator to Locate the | ) | |
| Cellular Device Assigned Call Number | ) | |
| (262) 498-6216 | ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____ *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before _____1-1-24_____ *(not to exceed 14 days)*
❒ in the daytime 6:00 a.m. to 10:00 p.m.     ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Hon. Stephen C. Dries_____ .
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❒ for _____ days *(not to exceed 30)*     ☑ until, the facts justifying, the later specific date of _____04/16/2024_____ .

Date and time issued:   _____12-18-23. 1:10 pm_____          *[signature: Stephen C. Dries]*
                                                                                        *Judge's signature*

City and state:   Milwaukee, WI          Honorable Stephen C. Dries, U.S. Magistrate Judge
                                                                    *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

# ATTACHMENT A

This warrant authorizes the use of the electronic investigative technique described in Attachment B to identify the location of the cellular device assigned phone number (262) 498-6216, whose wireless provider is AT&T Corporation, and whose listed subscriber is unknown.

1

# ATTACHMENT B

Pursuant to an investigation of Daniel LAMBERT for violations of 21 U.S.C. §§ 841(a)(1) and 843(b), this Warrant authorizes the officers to whom it is directed to determine the location of the **Target Cell Phone** identified in Attachment A by collecting and examining:

1. radio signals emitted by the **Target Cell Phone** for the purpose of communicating with cellular infrastructure, including towers that route and connect individual communications; and

2. radio signals emitted by the **Target Cell Phone** in response to radio signals sent to the **Target Cell Phone** by the officers;

for a period of thirty days, during all times of day and night. This warrant does not authorize the interception of any telephone calls, text messages, other electronic communications, and this warrant prohibits the seizure of any tangible property. The Court finds reasonable necessity for the use of the technique authorized above. *See* 18 U.S.C. § 3103a(b)(2).

1

**CLERK'S OFFICE**
**A TRUE COPY**
**Dec 18, 2023**
**s/ Mariah Kauder**
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

The Use of a Cell-Site Simulator to Locate the Cellular Device Assigned Call Number (262) 498-6216

)
)
)
)
)
)
)

Case No. 23-M-531 (SCD)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ Eastern _____ District of _____ Wisconsin _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) & 843(b) | Distribution and possession with intent to distribute controlled substances; illegal use of communication facility. |

The application is based on these facts:

See Affidavit in Support of an Application for a Search Warrant. To ensure technical compliance with the Pen Register Statute, 18 U.S.C. §§ 3121-3127, this warrant also functions as a pen register order. Consistent with the requirement for an application for a pen register order, I certify that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by the Federal Bureau of Investigation.

☑ Continued on the attached sheet.

☑ Delayed notice of __90__ days *(give exact ending date if more than 30 days:* __04/16/2024__ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

ELIZABETH MONFILS  Digitally signed by ELIZABETH MONFILS
Date: 2023.12.15 15:34:16 -06'00'

*Applicant's signature*

Elizabeth M. Monfils, Assistant United States Attorney

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means)*.

Date: **12-18-23**

*Judge's signature*

City and state: **Milwaukee, WI**

Honorable Stephen C. Dries, U.S. Magistrate Judge

*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, Jacob Cowan, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to employ an electronic investigative technique, which is described in Attachment B, to determine the location of the cellular device assigned call number **(262) 498-6216** (the "**Target Cell Phone**"), which is described in Attachment A.

2. I am a sworn federal law enforcement officer with the Federal Bureau of Investigation (FBI), with authority to investigate federal offenses pursuant to Titles 18, and 21 of the United States Code. I have been employed as a Special Agent with the FBI since June 2016. Prior to this, I served as an Officer in the United States Army for twelve years. I have obtained a Bachelor of Science Degree in Criminal Justice from the University of Wisconsin-Milwaukee, a Master's in Professional Studies (M.P.S.) from St. John's University, and a Post Graduate Certificate from the Kennedy School of Government at Harvard University. I graduated from the FBI Academy in Quantico, Virginia in 2016 and have over seven years of law enforcement experience. I have been involved in the enforcement and investigation of numerous violations of federal law to include drug trafficking investigations, firearm trafficking investigations, and violent crime related cases. I have personally conducted and participated in numerous investigations that have given me familiarity with the various methods that criminals use

1

to conduct illicit firearm and narcotics transactions in violation of federal law. I have used investigative techniques including, but not limited to: consensual monitoring, physical surveillance, witness and subject interviews, court authorized electronic surveillance, review and analysis of telephone records, and the execution of search and arrest warrants.

3.      In addition to my experience in the investigation of individuals involved in federal criminal offenses, I also have knowledge and experience in the apprehension and prosecution of individuals involved in federal criminal offenses. I am familiar with and have experience in the use of cellular devices used to commit those offenses as well as the available technology that can be used by law enforcement to assist in identifying the users of cellular devices and their locations.

4.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5.      Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

6.      One purpose of applying for this warrant is to determine with precision the **Target Cell Phone**'s location. However, there is reason to believe the **Target Cell Phone** is currently located somewhere within this district because the **Target Cell Phone's**

2

owner is known to spend most of his time in this district and has recently been seen in this district; the telephone number area code associated with the **Target Cell Phone** corresponds to this district, and location data obtained for the **Target Cell Phone** reflects that it is usually found in this district. Pursuant to Rule 41(b)(2), law enforcement may locate the **Target Cell Phone** outside the district provided the device is within the district when the warrant is issued.

7. Because collecting the information authorized by this warrant may fall within the statutory definitions of a "pen register" or a "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), this warrant is designed to comply with the Pen Register Statute as well as Rule 41. See 18 U.S.C. §§ 3121-3127. This warrant therefore includes all the information required to be included in a pen register order. See 18 U.S.C. § 3123(b)(1).

## PROBABLE CAUSE

8. The FBI is investigating allegations that members of the Gangster Disciples street gang, including DANIEL LAMBERT, are conspiring with each other, and other individuals yet unknown, to transport and distribute controlled substances, namely cocaine and fentanyl in Racine, Wisconsin. The investigation has revealed that LAMBERT is believed to reside in Racine, Wisconsin, and that he has used the **Target Cell Phone** in furtherance of drug-trafficking activity. During this investigation, a confidential source (CS) acting at the direction and control of case agents has purchased fentanyl pills from LAMBERT through controlled purchases.

3

9. Based on my training and experience, I know a "controlled buy" is a law enforcement operation in which an informant purchases drugs from the target. The operation is conducted using surveillance, usually audio and video taping equipment, and pre-recorded purchase money. When an informant is used, he/she is searched for contraband, weapons, and money before the operation. The informant is also wired with a concealed body recorder and/or a monitoring device. When the transaction is completed, the informant meets case agents at a pre-determined meet location and gives the purchased drugs and the recording/monitoring equipment to the case agents. The informant is again searched for contraband, weapons, and money and then interviewed by the case agents about the drug transaction. A sample of the suspected drugs is field tested by the case agents for the presence of controlled substances and then placed in inventory pursuant to normal inventory procedures. Unless otherwise noted, the calls to the target by the informants are consensually recorded under the direction and control of case agents and made in the presence of case agents.

10. On or about October 18, 2023, at the direction of the FBI, Confidential Source 2 (CS-2) assisted law enforcement with a controlled narcotics purchase from LAMBERT. CS-2 made an unrecorded telephone call to the **Target Cell Phone** to confirm LAMBERT was going to arrive at CS-2's location to conduct a narcotics transaction. Once in the presence of law enforcement, CS-2 made a recorded telephone call to the **Target Cell Phone**, and LAMBERT answered. LAMBERT said, "Hello, hello?" CS-2 said, "What's the word brother where you at?" LAMBERT said, "What's up [. . .] I be on my

4

way, I just going to be in my car." CS-2 said, "So how long you finna be?" LAMBERT said, "Shit, I'm going, I'm going to the job right now, shit, I'm gonna be like, shit I'm jumping on the highway." CS-2 said, "Alright." LAMBERT said, "I be on the highway in like ten minutes." CS-2 said, "Alright bet, I'm waiting on you come on." LAMBERT said, "Alright be on his way right now." CS-2 said, "Yup." LAMBERT said, "Alright tell her I'm on my way." CS-2 said, "Alright bet."

11.     At approximately 2:03 p.m. CS-2 received a telephone call from LAMBERT who was using the **Target Cell Phone**. CS-2 said, What's the word brother? LAMBERT said, "I'm outside fool." CS-2 said, "Bet."

12.     Law enforcement conducting physical surveillance observed LAMBERT arrive at CS-2's location, park his vehicle, and meet CS-2. Law enforcement also observed LAMBERT speaking on a cellular telephone while LAMBERT and CS-2 were having a conversation about LAMBERT's arrival to CS-2's location.

13.     When LAMBERT entered the location where CS-2 was located, a narcotics transaction was conducted, and LAMBERT supplied CS-2 with approximately 550 pills and a small bag of suspected cocaine. The substances were subjected to field testing, which reflected that the pills returned positive for the presence of fentanyl and the small bag indeed contained cocaine.

14.     Based on their training, experience, and familiarity with this investigation, case agents believe that LAMBERT used the **Target Cell Phone** to communicate with CS-2 about LAMBERT's arrival to the narcotics transaction location. Case agents believe

5

LAMBERT used the **Target Cell Phone** to coordinate the logistics of the narcotics transaction.

15. On or about October 25, 2023, at the direction of the FBI, CS-2 assisted law enforcement with another controlled narcotics purchase from LAMBERT.

16. At approximately 2:32 p.m., CS-2 was equipped with audio and video recording equipment and the devices were activated. CS-2 placed a consensually recorded telephone call to the **Target Cell Phone** and LAMBERT answered. LAMBERT said, "Yo." CS-2 said, "Yeah, can you come get me?" LAMBERT said, "Yeah, bet, where you at?" The CS-2 said, "On Lake." LAMBERT said, "Where that at, at that same spot?" CS-2 said, "Yup." LAMBERT said, "Alright."

17. Law enforcement was conducting physical surveillance and observed LAMBERT pick up CS-2 and drive to the location where the narcotics purchase was to occur. Once LAMBERT and CS-2 arrived at the buy location, LAMBERT, who had the narcotics on his person in LAMBERT's vehicle, handed CS-2 approximately 750 fentanyl pills, and two small bags of cocaine; both results were again based on field testing.

18. Information from public and law enforcement databases reflect that LAMBERT is the user of the **Target Cell Phone**. Law enforcement also conducted Department of Corrections database checks and the **Target Cell Phone** was provided by LAMBERT to state probation officers.

19. CS-2 began providing information to law enforcement in September 2023. CS-2 is cooperating in exchange for consideration on pending federal drug and firearm-

6

related offenses. The information provided by CS-2 to law enforcement agents is substantially against CS-2's penal interest. Additionally, to the extent possible, information provided by CS-2 has been corroborated by agents through external sources, including physical evidence, consensually recorded telephone calls, phone toll information, audio recordings, surveillance, and law enforcement databases. CS-2 has a criminal history that includes possession of a controlled substance, manufacturing and delivery of a controlled substance, battery, domestic violence, and various motor vehicle violations. Within the context of the information detailed and relied upon for purposes of this affidavit, case agents believe CS-2 is credible and CS-2's information reliable.

20. Based on their training, experience, and familiarity with this investigation, case agents believe that LAMBERT uses the **Target Cell Phone** to facilitate his narcotics trafficking.

21. On November 8, 2023, the Honorable William E. Duffin, United States Magistrate Judge, authorized a search warrant for the location information of the **Target Cell Phone**. Monitoring of this data was authorized for 30 days. On December 7, 2023, the Honorable William E. Duffin authorized an extension of the search warrant for the location information of the **Target Cell Phone**. Monitoring of this data was authorized for another 30 days.

22. The court-authorized location information for the **Target Cell Phone** leads case agents to be believe that LAMBERT resides at a multi-unit apartment complex

7

located at 815 8th Street, Racine, Wisconsin. However, this location data has not yet been able to establish in which apartment LAMBERT resides.

23. On or about November 30, 2023, at the direction of case agents, CS-2 assisted law enforcement officers with another controlled narcotics purchase from LAMBERT.

24. At approximately 8:57 a.m., CS-2 was equipped with audio and video recording equipment and the devices were activated. CS-2 placed a consensually recorded telephone call to the **Target Cell Phone**, and LAMBERT answered. LAMBERT said, "Hello." CS-2 said, "What's that word Slum?" LAMBERT said, "What up with you?" CS-2 said, "Meet me at Matranga's with that K-Pack." LAMBERT said, "Okay bet." CS-2 said, "How ling you finna be?" LAMBERT said, "I'm coming right now." CS-2 said, "Alright bet." LAMBERT said, "Alright."

25. Law enforcement officers were conducting physical surveillance and observed LAMBERT exit 815 8th Street, Racine, Wisconsin, where he is believed to reside, enter his vehicle, and drive to Matranga's Store, located at 1200 Villa Street, Racine, Wisconsin. Law enforcement officers observed CS-2 drive to Matranga's Store and park CS-2's vehicle next to LAMBERT's vehicle. CS-2 exited CS-2's vehicle and approached the front passenger door of LAMBERT's vehicle. CS-2 said, "Yeah, hell yeah." LAMBERT said, "What's up fool." CS-2 said, "What's the word brother, oh hell naw, don't do no dumb ass shit like that, what you talking about, what's that word brother." CS-2 handed LAMBERT $3,500 in U.S. pre-recorded currency, and LAMBERT handed CS-2 what CS-

8

2 believed, and what law enforcement believed, to be 1,000 fentanyl pills. LAMBERT said, "Shit, chilling." CS-2 said, "I love you man." LAMBERT said, "I love you too." CS-2 walked back to CS-2's vehicle and departed the area.

26. Law enforcement officers conducting physical surveillance observed LAMBERT drive his vehicle from Matranga's Store where the narcotics purchase occurred back to 815 8th Street, Racine, Wisconsin.

27. Thereafter, CS-2 provided to case agents approximately 497 pills that were blue in color and bore an "M30" marking, which pills were obtained from LAMBERT. Case agents visually inspected the pills and found them to be consistent with Oxycodone Hydrochloride based upon the pill identifier from Drugs.com. However, based on their training and experience and the previous seizures of fentanyl pills from LAMBERT, case agents believe that these pills are counterfeit and contained fentanyl. A sample of these pills was subjected to field testing, which returned negative for the presence of fentanyl. I know though that field testing of counterfeit M30 pills has produced false negative results for the presence of fentanyl. Accordingly, I believe based on my training and experience and based on the pills previously seized from LAMBERT, that the 497 M30 pills contain either Oxycodone Hydrochloride or fentanyl, both Schedule II controlled substances. Furthermore, LAMBERT has since acknowledged to CS-2 that he still owes the remaining 500 pills to CS-2, as CS-2 was shorted during this transaction.

28. As stated above, the location data for the **Target Cell Phone** has led agents to believe that LAMBERT resides in a multi-unit apartment complex, but it is unclear in

9

which apartment he resides. Case agents believe that the use of this electronic investigative technique will enable case agents to determine in which apartment unit LAMBERT is residing and using to facilitate his narcotics trafficking activities.

## MANNER OF EXECUTION

29. In my training and experience, I have learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications. When sending or receiving a communication, a cellular device broadcasts certain signals to the cellular tower that is routing its communication. These signals include a cellular device's unique identifiers.

30. To facilitate execution of this warrant, law enforcement may use an investigative device or devices capable of broadcasting signals that will be received by the **Target Cell Phone** or receiving signals from cellular devices, including the **Target Cell Phone**. Such a device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell phone to communicate with others. The device may send a signal to the **Target Cell Phone** and thereby prompt it to send signals that include the unique identifier of the device. Law enforcement may monitor the signals broadcast by the **Target Cell Phone** and use that information to determine the **Target Cell Phone's** location, even if it is located inside a house, apartment, or other building.

10

31.     The investigative device may interrupt cellular service of phones or other cellular devices within its range.  Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices.  In order to connect with the **Target Cell Phone**, the device may briefly exchange signals with all phones or other cellular devices in its range.  These signals may include cell phone identifiers.  The device will not complete a connection with cellular devices determined not to be the **Target Cell Phone**, and law enforcement will limit collection of information from devices other than the **Target Cell Phone**.  To the extent that any information from a cellular device other than the **Target Cell Phone** is collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the Target Cellular Device from all other cellular devices.

## AUTHORIZATION REQUEST

32.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41.  The proposed warrant also will function as a pen register order under 18 U.S.C. § 3123.

33.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 120 days from the end of the period of authorized surveillance.  This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705.

11

Providing immediate notice to the subscriber or user of the Target Cellular Device would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and to flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). There is reasonable necessity for the use of the technique described above, for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

34.    I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **Target Cell Phone** outside of daytime hours.

35.    A search warrant may not be legally necessary to compel the investigative technique described herein. Nevertheless, I hereby submit this warrant application out of an abundance of caution.

Respectfully submitted,

Jacob Cowan
FBI Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me
by telephone on: 12-18-23

UNITED STATES MAGISTRATE JUDGE
STEPHEN C. DRIES

12

## ATTACHMENT A

This warrant authorizes the use of the electronic investigative technique described in Attachment B to identify the location of the cellular device assigned phone number (262) 498-6216, whose wireless provider is AT&T Corporation, and whose listed subscriber is unknown.

1

# ATTACHMENT B

Pursuant to an investigation of Daniel LAMBERT for violations of 21 U.S.C. §§ 841(a)(1) and 843(b), this Warrant authorizes the officers to whom it is directed to determine the location of the **Target Cell Phone** identified in Attachment A by collecting and examining:

1. radio signals emitted by the **Target Cell Phone** for the purpose of communicating with cellular infrastructure, including towers that route and connect individual communications; and

2. radio signals emitted by the **Target Cell Phone** in response to radio signals sent to the **Target Cell Phone** by the officers;

for a period of thirty days, during all times of day and night. This warrant does not authorize the interception of any telephone calls, text messages, other electronic communications, and this warrant prohibits the seizure of any tangible property. The Court finds reasonable necessity for the use of the technique authorized above. *See* 18 U.S.C. § 3103a(b)(2).

1